IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
(Civil Division)

BRIANT COLEMAN,
Plaintiff,                                              CASE NO.:

v.

THE UNIVERSITY OF CENTRAL FLORIDA

and

THE UNIVERSITY OF CENTRAL FLORIDA
BOARD OF TRUSTEES,
Defendants.

_____\

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, BRIANT COLEMAN ("Plaintiff'), by and through his attorneys, and sues the Defendants THE UNIVERSITY OF CENTRAL FLORIDA and THE UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES , (hereinafter referred as "UCF" or "Defendant") a Florida public research university doing business in the State of Florida and alleges:

Parties

1. Plaintiff, Briant Coleman, was an employee of Defendant, UNIVERSITY OF CENTRAL FLORIDA.

2. Defendant is a public research university doing business in the state of Florida.

3. Plaintiff worked as an Associate Vice President for Strategic Initiatives, Communications and Marketing for Defendant until his date of termination on October 18, 2019.

Jurisdiction

4. At all relevant times, Plaintiff was domiciled in Orange County, Florida.

5. Defendant is a Florida public research university in Orange County, Florida.

6. Defendant conducts business and employed Plaintiff in Orange County, Florida and the amount in controversy exceeds $100,000.

7. All material events occurred in Orange County, Florida.

8. This lawsuit has been filed in a timely manner.

9. All prerequisites have been satisfied.

10. Plaintiff is a black male and therefore is a member of a protected class.

11. Defendant is subject to 42 U.S. Code § 1981.

12. Plaintiff is entitled by virtue of 42 U.S.C. § 1981 to be protected from racial discrimination.

General Factual Allegations

13. Plaintiff was employed with Defendant as an Associate Vice President for Strategic Initiatives, Communications and Marketing.

14. As an Associate Vice President for Strategic Initiatives, Communications and Marketing, his duties included fostering new partnerships with internal and external stakeholders, marketing, communication and outreach to students, parents, and families, reviewing, assessing and managing finance, human resources, contracting and procurement functions within the Office of the Provost and Academic Affairs.

15. Defendant, by and through its managers and employees, habitually harassed Plaintiff on the basis of his race. Defendant subjected Plaintiff to disparate treatment on the basis of his race. Defendant continuously showed non-Black employees preferential treatment and Plaintiff was treated less favorably due to his race.

16. The unwanted racially hostile environment was premised in race and was directed towards Plaintiff on account of Plaintiff's race and would not have occurred but for Plaintiff's race.

*Hostile Work Environment*

17. In June 2018, Plaintiff was appointed to a task force on diversity, equity and inclusion by President, Dale Whittaker. The taskforce was responsible for identifying and implementing actionable strategies to transform the culture of Defendant into one that celebrates equity, diversity, and inclusion, as well as promoting the success of under-represented groups.

18. In or around October 2018, Defendant promoted Elizabeth Dooley to Provost and Vice President. Ms. Dooley accepted the position on the condition that Plaintiff would be allowed to join her staff. In turn, Ms. Dooley was asked not to give him the position. However, Ms. Dooley insisted that Plaintiff be hired as Associate Vice President for Strategic Initiatives, Communications and Marketing.

19. As a part of her staff organization, Ms. Dooley communicated to the incumbent Chief of Staff, Ronnie Korosec, that she would not need a Chief of Staff and would be restructuring her duties. A piece of Ms. Korosec's duties were given to Plaintiff.

20. Ms. Korosec was agitated by sharing her portfolio with Plaintiff. An illustration of her frustration occurred at a football game where Ms. Korosec's husband confronted and threatened Plaintiff by saying they would "get him out" of the provost office.

21. In or around November 2018, in response to asking for clarification of office seating arrangements, Ms. Korosec falsely accused Plaintiff of discrimination on the basis of her gender and race.

22. In or around March 2019, Dale Whittaker resigned. President Whittaker's resignation marked an increase in hostile actions towards Plaintiff.

23. In or around February/March 2019, and in response to Ms. Dooley's insistence on Plaintiff's hire, Defendant initiated an investigation into Plaintiff's hire alleging that it was improper. The results of the investigation did not substantiate the allegations. Shortly thereafter, Plaintiff was hired as Associate Vice President for Strategic Initiatives, Communications and Marketing.

24. In or around September 2019, Plaintiff was notified that he was being investigated for his behavior within the office. He was told that the investigation was prompted by anonymous tips concerning his treatment of other employees.

25. As a part of the investigation, Plaintiff was interviewed and requested an attorney to sit in on the interview or to record the interview. However, in violation of Defendant's internal EEO policy, Plaintiff was denied both requests.

26. At the completion of the investigation into Plaintiff, Rhonda Bishop, Vice President for Compliance, Ethics and Risk, manufactured a report that was based on anonymous tips and accusations. Eventually, this report was used to terminate Plaintiff's employment with the university.

27. Ms. Dooley was called into a meeting with all Caucasian women who directed her to terminate Plaintiff. She objected to Plaintiff's termination. To this end, she spoke to the university's president, Thad Seymore, who told her that he recognized that the complaints were unfair and baseless, but that Plaintiff was not liked by staff and needed to go. Ms. Dooley again objected to Plaintiff's termination and in response, Mr. Seymore threatened Ms. Dooley with termination.

28. On October 18, 2019, Plaintiff was given a notice of non-renewal by Elizabeth Dooley, Provost and Vice President for Academic Affairs. Ms. Dooley indicated that she was "scratching her head" because she had never witnessed such an unfair, discriminatory termination. Ms. Dooley told the Plaintiff that he was being terminated because he was Black and gay.

*Retaliation*

29. During his tenure with Defendant, Plaintiff repeatedly made complaints of racial discrimination. While employed with Defendant, Plaintiff made at least twenty complaints of racial discrimination.

30. In 2017, Plaintiff served on a search committee for the Director of Equal Employment Opportunity. During the search process, he witnessed several incidents of discrimination of a black female candidate by the Caucasian female committee members. The committee members called her "lazy", "difficult" and "crazy". The members remarked that she took too much time doing her "mangled" hair.

31. At the end of the search process, Plaintiff reported the discrimination to the search committee members, which consisted of Rhonda Bishop, Sheila Daniels, Executive Director of Human Resources and Youndy Cook, interim Vice President and General Counsel. Plaintiff also reported the discrimination to his direct supervisor, Maribeth Ehasz, Vice President for Student Development and Enrollment Services and several high ranking university officials.

32. After this incident, Plaintiff started to be treated differently by staff within the president's office and staff within the Office of the General Counsel and the Office of Compliance, Ethics and Risk.

33. In 2017, Plaintiff reported to Maribeth Ehasz, Vice President for Student Development and Enrollment Services, that a star football player had lied on his admissions

application about being suspended from another school for an alleged sexual assault. Plaintiff advised her of the university's policies and procedures regarding student misconduct and that it required the student to be placed on suspension or removal of the player. She advised Plaintiff that because the university's football team generated significant revenue and bonuses for staff, the president and athletic department decided not to remove the player and that we would not follow the normal student code of conduct procedure.

34. Plaintiff also reported this incident to the Office of Compliance, Ethics and Risk. After this incident, he was harassed and intimidated by staff within the president's office and athletic department. He was no longer invited to key meetings or to important functions.

35. On or around March 1, 2017, Plaintiff witnessed a Caucasian co-worker, Elvis Wannamaker, Executive Assistant to the Associate Vice President, call a Black female employee the "help" and he stated that now that Donald Trump was President of the United States things would go back to the old days of segregation. Plaintiff reported this incident to his supervisor, Maribeth Ehasz. Defendant took no action in relation to this incident.

36. On yet another occasion in 2017, a Caucasian male co-worker commented that he was upset about the removal of confederate flags from public spaces in New Orleans. He also indicated that blacks should worship people like his cousin – General Robert E. Lee – and that Adolf Hitler and General Lee were heroes and should be recognized for their contributions to society. Plaintiff was offended by and reported this conduct. Again, no one in the administration took any action after Plaintiff expressed his feelings about this being offensive. When this matter was communicated to a representative of UCF's Human Resources department, a Caucasian staff member advised, "You should not trust him. Avoid him and keep your eyes open because he's going to attack you."

37. On or around June 26, 2018, Plaintiff was called a "nigger" by a Caucasian co-worker, Elvis Wannamaker, Executive Assistant to the Associate Vice President. Plaintiff reported this incident to Human Resources.

38. Plaintiff's supervisor, Ms. Maribeth Ehasz, directed Plaintiff to withdraw his complaint from Human Resources. She stated that if he did not withdraw the complaint, he would have serious issues in his current role and jeopardize his future at the university. When Plaintiff refused to withdraw his complaint, she told him that she would see to it that his tenure at the university was over and his career ruined.

39. In October 2018, Plaintiff hired a Black male and a Hispanic male. While both the Plaintiff and new hires were in the office, a Caucasian Vice Provost for Faculty Excellence, Jana Jasinski, commented that there were "three strange men" in the office. Once notified of this remark, Plaintiff filed a complaint with Human Resources. The complaint resulted in sensitivity training being required for the office.

40. On April 24, 2019, Plaintiff reported abuse, misconduct and fraud in the university's contracting and procurement process to the Office of Audit, Compliance and Risk; Grant Heston, chief of staff and vice president for communications and marketing and Elizabeth Dooley, provost and vice president for academic affairs.

41. In his complaint, Plaintiff indicated that staff members were circumventing the procurement process. He also indicated that the external auditors and investigators required that we notify them of all issues related to finance and administration as required by the mandate from the Florida Board of Governors and state legislature. He was told to keep silent because the university did not need negative publicity and extra scrutiny. Plaintiff indicated that he felt compelled to report the abuse to the Florida Board of Governors. He was told by Youndy Cook

7

and Christina Serra, Director of Compliance and Ethics that he should not report this incident and if he did, there would be severe consequences that would jeopardize his tenure at the university.

## COUNT ONE
### Race Discrimination in violation of 42 U.S.C. § 1981

42. Plaintiff hereby incorporates and re-alleges 1-41, above.

43. Plaintiff is a black male and therefore a member of a protected class due to his race.

44. Plaintiff was terminated by Defendant on October 18, 2019.

45. Defendant is engaged in interstate commerce by virtue or Defendant's business, which is an educational institution and receiving federal benefits.

46. Plaintiff was subjected to a racially hostile workplace environment repeatedly throughout the period of time in which Plaintiff worked for Defendant.

47. Defendant consistently and habitually treated Plaintiff in a less favorable manner than non-Black employees in Defendant's workplace.

48. Defendant treated Plaintiff in a less favorable manner than non-Black employees because Plaintiff is a Black male.

49. Plaintiff was entitled to be treated in the same manner as non-Black employees and was entitled to receive the same terms, conditions, privileges, and benefits as the non-Black employees in Defendant's workplace.

50. 42 U.S.C. 1981, in pertinent part states "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other, thereby prohibiting employers such as Defendant from subjecting Plaintiff to a racially hostile work place.

51. Under 42 U.S.C. § 1981, Defendant was not permitted to subject Plaintiff to a racially disparate work place.

52. Despite the provisions of 42 U.S.C. § 1981, Defendant both subjected Plaintiff to a racially hostile work place in violation of 42 U.S.C. § 1981 and took adverse employment actions against Plaintiff.

53. Plaintiffs were damaged as a direct result of Defendant's discriminatory treatment.

## JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs desires a trial by jury and judgment and all relief available under 42 U.S.C. § 1981, including emotional distress, punitive, compensatory damages as well as reasonable attorney fees and costs and pre-judgment interest, not back or front pay.

Dated this 27th day of January, 2021.  Respectfully submitted,

/s/ Reshad D. Favors
Reshad D. Favors, Esq.
reshad@bsflegal.com
1875 Connecticut Ave 10th Floor
Washington, DC 20006
202.508.8249 (Telephone)
*Counsel for Plaintiff*