**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRIANT COLEMAN,

    Plaintiff,

v.                                                                     Case No:   6:21-cv-547-GAP-DCI

THE UNIVERSITY OF CENTRAL
FLORIDA BOARD OF TRUSTEES,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 27). In ruling on this Motion, the Court considered Plaintiff's Response in Opposition (Doc. 28).

### I.     Background[1]

This is an employment discrimination lawsuit that Plaintiff Briant Coleman ("Coleman") brings against the University of Central Florida Board of Trustees ("UCF"). Coleman claims he was subject to adverse treatment and a hostile environment because he is a black male. Coleman worked at UCF as an Associate

---

[1] This factual summary is based on the allegations contained in the Second Amended Complaint (Doc. 24) and "in reviewing motions to dismiss we accept as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

Vice President for Strategic Initiatives, Communications, and Marketing. Coleman was appointed to this position on the insistence of then-Provost and Vice President of UCF, Elizabeth Dooley ("Dooley").[2] Coleman served in this role from October 2018 until October 2019,[3] when UCF notified him that it would not renew his contract.

During his tenure as Assistant Vice President, Coleman was the target of several complaints and investigations. The Chief of Staff accused Coleman of race and gender discrimination and her husband threatened Coleman's employment. UCF investigated Coleman's appointment based on allegations of improper hiring practices. Dooley attended a meeting where she was informed that Coleman was not liked and would have to be let go. Coleman was eventually given a notice of non-renewal on October 18, 2019.

Coleman made several complaints regarding the conduct of other employees, but claims he was punished or ignored for making these complaints. Coleman attended a search committee meeting that was convened to hire a

---

[2] The Complaint indicates that Coleman was employed by UCF prior to his appointment to this position. The Complaint is not clear as to what position he initially held or for how long he has been employed by UCF before the events detailed in the Complaint.

[3] The Complaint is also not clear as to when Coleman was appointed to this role. Some allegations suggest that Coleman started as Associate Vice President in October 2018 (*see* Doc. 24 ¶¶ 17–21), while elsewhere, the Complaint states that Coleman was appointed in February or March 2019 (Doc. 24 ¶ 23). Coleman's Response in Opposition states that Coleman was hired in October 2018. Should Coleman elect to amend his Complaint, he would be well served by clearly alleging the sequence of events in this case.

director, where other officials made derogatory comments towards a black female candidate. Coleman reported these comments and began to be treated differently afterwards. Coleman reported a separate issue regarding a UCF football player, which was ignored. Coleman alleges that he was "harassed and intimidated" by other staff for reporting this incident but does not specify what occurred. Coleman also reported fraud and abuse and alleges that he was told not to make this report.

Coleman also claims that he experienced several instances of discrimination unrelated to his complaints. Coleman alleges that in 2017 a coworker told him that black people should "worship" people like General Robert E. Lee and that General Lee and Adolph Hitler were "heroes." Another coworker called a black coworker "the 'help' and he stated that now that Donald Trump was President of the United States things would go back to the old days of segregation." Doc. 24 ¶ 35. In 2018, that same coworker called Coleman the n-word. *Id*. ¶ 37. Coleman reported these incidents, but UCF took no action.

Coleman also alleges that he, another black employee, and a Hispanic employee were all referred to as "strange men" in the office by a high-ranking UCF official. Coleman reported this incident and UCF required his office to undergo sensitivity training.

Coleman originally filed this lawsuit in state court and UCF filed a notice of removal on March 25, 2021 (Doc. 1). In his Second Amended Complaint[4] (Doc. 24) (hereinafter, the "Complaint"), Coleman asserts three claims under 42 U.S.C. § 1983 for racial discrimination, hostile work environment, and retaliation, all in violation of the Equal Protection Clause of the Fourteenth Amendment. UCF now seeks the dismissal of the Complaint in its entirety.

## II. Legal Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson*, 21 F.3d at 1534, and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

---

[4] Coleman amended his complaint twice following motions to dismiss from UCF. Coleman's Second Amended Complaint is incorrectly titled "Plaintiff's First Amended Complaint and Demand for Jury Trial." *See* Doc. 24 at 1.

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.   Analysis

UCF moves to dismiss Coleman's Complaint in its entirety. The Court addresses UCF's arguments as to each of the three counts in turn.

#### A. Racial Discrimination (Count I)

To state a claim for racial discrimination under Section 1983, a plaintiff must allege that "(1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subjected to an adverse employment action; (4) and the

employer treated a similarly situated employee outside of the protected class more favorably." *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 130 (11th Cir. 2019) (citing *Smith v. Lockheed Martin-Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). UCF contends that Coleman failed to adequately allege that he was subjected to an adverse employment action or that similarly situated employees outside of his class were treated more favorably.

UCF argues, without citation to legal authority, that its notice of non-renewal of Coleman's employment contract does not qualify as an adverse action because Coleman "was permitted to complete the remainder of his employment contract unimpeded." Doc. 27 at 6. However, numerous courts in this circuit have held that the non-renewal of an employment contract constitutes an adverse employment action. *See, e.g.*, *Saxon v. Seminole Cnty. Pub. Schs.*, 6:15-cv-1854-Orl, 2017 WL 2538075, at *2 (M.D. Fla. June 12, 2017); *Saridakis v. S. Broward Hosp. Dist.*, 681 F. Supp. 2d 1338, 1348 (S.D. Fla. 2009). Therefore, this argument fails.

UCF next argues that Coleman failed to factually support his allegation that UCF "consistently and habitually treated Plaintiff in a less favorable manner than non-black employees in Defendant's workplace." Doc. 24 ¶ 48. As UCF recognizes, Coleman alleges several incidents where he made a complaint that went ignored. *Id.* ¶¶ 29–41. For example, when he made complaints about the conduct of non-black employees, including incidents where two Caucasian

employees made racist comments to him, UCF took no action. In contrast, Coleman alleges that complaints directed against him were taken more seriously than his own and led to his termination. *Id.* ¶¶ 23–28. These allegations, along with Dooley's comment that he was terminated because he was black (Doc. 25 ¶ 28), are sufficient to establish Coleman's claim for racial discrimination.

### B. Hostile Work Environment (Count II)

Next, UCF argues that Coleman failed to state a claim for a hostile work environment in violation of the Equal Protection Clause. An employee states a claim for hostile environment harassment if he alleges:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation omitted).

UCF argues that Coleman failed to allege any facts that can establish he was subjected to unwelcome harassment, simply because Coleman failed to include any such allegations under the heading "Hostile Environment Harassment" in the Complaint. True enough, the allegations under that heading deal with the complaints against Coleman. However, this argument completely ignores the

other sections of the Complaint containing factual allegations detailing the racist and offensive comments that Coleman was subjected to or that he witnessed. *See* Doc. 24 ¶ 35 (an employee discussed how "things would go back to the old days of segregation"); ¶ 36 (an employee told Coleman that black persons should "worship" General Robert E. Lee and Adolph Hitler); ¶ 37 (an employee called Coleman the n-word); ¶ 39 (a Caucasian employee referred to Coleman and two other non-Caucasian employees as "three strange men").

UCF declines to address these allegations in its Motion. UCF's only argument as to this count seems to be that the Court must ignore these allegations because they were not given an appropriate label. This argument is without legal support. Therefore, UCF's Motion is due to be denied in this respect as well.

### C. Retaliation (Count III)

Last, UCF argues that Coleman's retaliation claim should be dismissed because a retaliation claim under § 1983 does not implicate the Equal Protection Clause. Coleman alleges that UCF violated his Equal Protection rights by retaliating against him. The Eleventh Circuit has held that "[a] pure or generic retaliation claim . . . does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354–55 (11th Cir. 1997). Coleman recognizes this precedent and explains that while his "complaints may have been a reason he was retaliated against, there is a significant suspicion that [Coleman's] race in and of

itself served as a basis for his 'non-renewal' or 'termination.'" Doc. 28 at 14. To the extent that Coleman links his retaliatory dismissal under this count to his race, "that allegation constitutes part of [his] equal protection discrimination." *See Watkins*, 105 F.3d at 1355. Therefore, Count III will be dismissed without prejudice.

### IV.   Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 27) is **GRANTED** in part and **DENIED** in part. Count III of Plaintiff's Second Amended Complaint (Doc. 24) is dismissed without prejudice. In all other respects, Defendant's Motion is denied. If Plaintiff wishes to file an amended complaint, he may do so within 21 days of the date of this order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 16, 2021.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party